IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LANCE WESTFALL,**

   Civil No. 08-891-BR

  **Petitioner,**

   OPINION AND ORDER

 v.

**BRIAN BELLEQUE, Superintendent
Oregon State Penitentiary,**

  **Respondent.**

 **MARK BENNETT WEINTRAUB**
 Assistant Federal Public Defender
 151 W. 7th Avenue
 Suite 510
 Eugene, OR  97401

  Attorney for Petitioner

 **JOHN R. KROGER**
 Attorney General
 **KRISTEN E. BOYD**
 Assistant Attorney General
 Department of Justice
 1162 Court Street NE
 Salem, OR  97301

  Attorneys for Respondent

1 - OPINION AND ORDER -

**BROWN, Judge.**

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court **DENIES** the Petition for Writ of Habeas Corpus.

## BACKGROUND

On September 18, 2000, a Multnomah County grand jury indicted Petitioner on charges of Manslaughter in the First Degree, Assault in the Second Degree, Assault in the Third Degree, Driving Under the Influence of Intoxicants, and Unlawful Possession of a Firearm.  The charges arose from a motor vehicle accident in the early morning hours of September 9, 2000.

After leaving work on September 9, 2000, Petitioner drank two pints of "Black Beauty Porter," followed by "about three" cans of beer.  Petitioner and several of his friends then drank approximately one-half gallon of an alcoholic beverage "mudslide mix" with a "pint or a half-pint" of rum.  According to Petitioner, he got behind the wheel of his car "maybe half an hour" after this bout of drinking.  Kirk Gavette, a friend of Petitioner's who had been drinking with him that evening, got into the passenger seat.

Petitioner drove his car to a Plaid Pantry convenience store to purchase more alcohol.  He then speeded through the streets of

2 - OPINION AND ORDER -

northeast Portland.  According to a police report, Gavette stated Petitioner ignored several stop signs, laughing as he did so.

Petitioner approached the intersection of Northeast 26th Avenue and Fremont Street at approximately 50 miles per hour. Petitioner drove into the intersection without even slowing for the stop sign and slammed into a pickup truck driven by 16-year old Jessica Cameron.  A witness in the car behind Ms. Cameron's pick-up testified she was driving the speed limit and there was no time for her to avoid the crash.

Ms. Cameron was thrown from her pick-up truck.  An officer responding to the accident scene reported Ms. Cameron was seriously injured and unable to respond to questions.  Ms. Cameron was transported to Emmanuel Hospital, but was declared dead on arrival.  A passenger in Ms. Cameron's pick-up, 16-year old Keeston Scott, was able to crawl out of the pick-up with only minor injuries.

Petitioner's passenger, Gavette, was seriously injured. Gavette suffered severe facial lacerations and severe cuts to the top of his head.  He also was transported to the hospital, where approximately 300 stitches were required to close the gashes on his head and face.

Petitioner emerged from the collision relatively unscathed. He was bleeding from the upper left side of his head and had a laceration on his knee.  He was also transported to the hospital

3 - OPINION AND ORDER -

for treatment. A blood test taken at the hospital revealed Petitioner's blood alcohol content was 0.252%, over three times the legal limit. One hour later, a repeat blood test showed Petitioner's blood alcohol content was 0.17%, over twice the legal limit. At the time of the accident, Petitioner told an investigating officer he did not remember what happened.

On January 10, 2001, the case proceeded to a jury trial. The trial judge granted Petitioner's motion for judgment of acquittal on the charge of Assault in the Third Degree. The jury convicted Petitioner on the remaining four counts.

On February 16, 2001, the trial judge conducted a sentencing hearing. There, the judge informed the parties of his intent to impose an upward departure sentence of 200 months on the Manslaughter in the First Degree conviction. Petitioner's attorney objected and advised the trial judge he believed it was an unlawful sentence. The judge noted the objection and indicated he intended to impose the sentence in any event, but that if the case was returned to him for re-sentencing he would impose a consecutive sentence on the Assault in the Second Degree conviction. The judge went on to verbally order Petitioner to serve 200 months on the Manslaughter conviction, concurrently with 70 months on the Assault in the Second Degree conviction and 360 days on the DUII conviction. On the Unlawful Possession of a

Firearm conviction, the judge ordered petitioner to serve 360 days to run consecutively to the DUII sentence.

On March 23, 2001, the trial judge re-convened the sentencing proceeding. At that hearing, the trial judge acknowledged Petitioner's attorney was correct in his objection -- the court could not legally sentence Petitioner to 200 months on the Manslaughter conviction. Accordingly, the trial judge corrected the sentence on the Manslaughter conviction to reflect a Measure 11 maximum sentence of 120 months. The 70-month sentence on the Assault conviction was imposed to run consecutively, for a total of 190 months of imprisonment. The remainder of the sentence on the additional convictions was unchanged.

Petitioner filed a direct appeal. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *State v. Westfall*, 192 Or. App. 487, 89 P.3d 95, *rev. denied*, 337 Or. 34, 93 P.3d 71 (2004).

Petitioner then sought state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial judge denied relief. On appeal, Oregon Court of Appeals entered an order of summary affirmance and the Oregon Supreme Court denied review.

On July 28, 2008, Petitioner filed his Petition for Writ of Habeas Corpus in this Court. The Petition alleges nine separate grounds for relief. Petitioner concedes, however, that all but one ground for relief were not properly preserved for federal

5 - OPINION AND ORDER -

habeas review. The remaining ground for relief before this Court is Petitioner's claim he received constitutionally ineffective assistance of counsel because his trial attorney failed to locate and call as a witness at trial Kirk Gavette, the passenger in Petitioner's car at the time of the crash. Petitioner argues Gavette's failure to testify regarding the cause of the accident and the extent of his injuries made Petitioner's conviction more likely and contributed to the consecutive sentence on Count Two.

## LEGAL STANDARDS

Under 28 U.S.C. § 2254(e)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v.*

6 - OPINION AND ORDER -

*Andrade*, 538 U.S. 63, 73 (2003). A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

The Supreme Court has established a two-part test to determine whether a defendant has received ineffective assistance of counsel. Under this test, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-888 (1987).

To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

To establish the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that,

7 - OPINION AND ORDER -

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" *United States v. Palomba*, 31 F.3d 1456, 1460-61 (9th Cir. 1994) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)).

## DISCUSSION

The PCR trial judge considered and rejected Petitioner's claim that counsel was constitutionally ineffective for failing to call Kirk Gavette as a witness at Petitioner's trial. The PCR judge entered the following pertinent Findings of Fact and Conclusions of Law:

FINDINGS OF FACT

\* \* \*

>     2.   The facts of the case involve a motor vehicle crash caused by the petitioner, who at the time of the incident was under the influence of intoxicants.  A sixteen year-old girl was killed and another teenager was seriously injured as a result of the crash. Petitioner was convicted after a jury trial on March 23, 2001 of Count 1 Manslaughter in the First Degree, Count 2 Assault in the Second Degree, Count 4 Driving Under the Influence of Intoxicants, and Count 5 Unlawful Possession of a Firearm.
>
>     3.   Petitioner was sentenced to 120 months on Count 1, and 70 months on Count 2 consecutive to one another.  He was also sentenced to 360 days each on Counts 4 and 5

8 - OPINION AND ORDER -

consecutive to one another, but concurrent to counts 1 and 2.

4. The Court has reviewed and considered all the materials before it including Petitioner's Exhibits 1-9 (Trial Docket, Indictment, Judgment, Court of Appeals docket, Appellant's brief, Respondent's brief, Supreme Court docket, Appellate Judgment, Police Reports), and Defendant's Exhibits 101-112 (Trial Transcript, Pre-Sentence Investigation Report, Affidavit of Gareld Gedrose, Affidavit of Probable Cause, Indictment, Verdict, Judgment, Notice of Appeal, Appellant's Amended Brief, Respondent's Brief, Appellate Judgment, Petition for Review). The Court incorporates the following findings of fact with respect to the allegations:

\* \* \*

(3) Trial counsel fully investigated petitioner's case and prepared for trial. Specifically:

(a) Trial counsel attempted to locate and interview necessary witnesses including Gavette. A private investigator was hired but despite "substantial efforts" he was unable to be located." (Exhibit 103, Affidavit of Gareld Gedrose). The State also attempted to locate Gavette without success. Furthermore, it is unlikely Gavette would have benefitted petitioner's case as he told the police petitioner was laughing after running through several stop signs.

\* \* \*

(c) Trial counsel fully investigated the cause of the collision including hiring a qualified accident reconstructionist who testified for the defense at trial. Furthermore, trial counsel met with petitioner numerous times before trial in preparation for the trial and petitioner's testimony. (Ex 103, Affidavit of Gareld Gedrose). Petitioner's version of events has changed since his testimony and trial counsel was not told that the crash was caused by a dropped lighter. Petitioner's original trial

9 - OPINION AND ORDER -

> testimony was that he had no idea how the crash occurred because he was driving normal.
>
> * * *
>
> CONCLUSIONS OF LAW
>
> 1.   Based on the findings of fact set forth above, in the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), or the Constitutional of the State of Oregon.
>
> * * *
>
> 6.   Petitioner did not prove the facts underlying any of his post-conviction claims by a preponderance of the evidence.  Thus petitioner has not shown, as required by *Strickland*, (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's allegedly unprofessional errors, the result of the proceedings would have been different.

Respondent's Exhibit 126, pp. 3-6.

The PCR judge's decision was not contrary to or an unreasonable application of *Strickland*.  Petitioner's attorney, along with the prosecutor, attempted to locate Gavette but was unable to do so.  While Petitioner's trial attorney informed the judge at the sentencing hearing that "a civil investigator *may* have been able to locate" Gavette, there is no further evidence that the investigator was able to do so.  Moreover, it appears from the record that Petitioner himself had no idea where Gavette was at the time of trial and sentencing.  As such, trial counsel's

10 - OPINION AND ORDER -

Case 3:08-cv-00891-BR    Document 42    Filed 11/19/10    Page 11 of 12

failure to call Gavette as a witness did not fall below an objective standard of reasonableness.

Moreover, Petitioner fails to establish he was prejudiced by counsel's failure to call Gavette. Petitioner presented only his speculation of what Gavette might have testified to had he been called at trial. Indeed, Petitioner's speculation that Gavette would have testified Petitioner was "was driving fine" and he was "making all the stops that was needed" is contradicted by Gavette's own statement to police officers that Petitioner laughed while driving through stop signs. It is also contradicted by evidence developed through other witnesses at trial that Petitioner was driving at approximately 50 miles per hour and that he blew through the stop sign, flying into the intersection where the crash occurred. As such, even if Gavette testified as Petitioner speculated, Petitioner cannot show there is a reasonable possibility the results of the proceeding would have been different.

Finally, with respect to the seriousness of Gavette's injuries, Petitioner fails to offer any evidence that Gavette would have offered mitigating evidence sufficient to convince the trial judge to impose a concurrent sentence on Count 2. In light of the fact that Gavette suffered severe cuts to his face and head requiring over 300 stitches to close, Petitioner has not

11 - OPINION AND ORDER -

established a reasonable possibility the trial judge would have imposed a concurrent sentence.

Petitioner has not established he is entitled to relief on his claim that trial counsel provided constitutionally ineffective assistance of counsel. The PCR court decision denying relief on this claim was not contrary to or an unreasonable application of clearly established federal law and, as such, Petitioner cannot obtain habeas corpus relief in this Court.

## CONCLUSION

For these reasons, the Court **DENIES** the Petition for Writ of Habeas Corpus (#1) and **DISMISSES** this action.

The Court DENIES a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 19th day of November, 2010.

                     /s/ Anna J. Brown
                     ANNA J. BROWN
                     United States District Judge